D. Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

**JOAN HARVEY,**

       **Plaintiff,**

       v.

**DELTA AIR LINES, INC.,**


       **Defendant,**
-------------------------------------------------------x

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Joan Harvey alleges as follows:

## INTRODUCTION

1. Plaintiff Joan Harvey, a 62-year-old African-American woman, worked for Defendant Delta Air Lines for over 30 years.

2. After 30 years of impeccable service, Delta Air Lines egregiously discriminated against Plaintiff on the basis of her age and race. Specifically, Defendant terminated Plaintiff based on false and unfounded accusations by a white employee and without providing Plaintiff access to the internal disciplinary and appeal process routinely applied to younger and white employees.

3. Even after Plaintiff presented overwhelming evidence of her innocence, Delta upheld its decision to terminate her – disregarding documentary evidence and the testimony from at least three Black witnesses and character witnesses.

## JURISDICTION AND VENUE

4.      Plaintiff Joan Harvey brings this action against Defendant Delta Air Lines, Inc. alleging discrimination claims brought under 42 U.S. Code § 1981 ("Section 1981"), Title VII of the Civil Rights Act ("Title VII"), Age Discrimination in Employment Act ("ADEA), and the New York State Human Rights Law, New York Administrative Code §§ 8-107(1), et al.

5.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under Section 1981 and Title VII. This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

7.      Defendant Delta Air Lines, Inc. ("Defendant" or "Delta") is a major air carrier that provides scheduled air transportation for passengers and cargo throughout the United States and around the world. Delta is a Delaware corporation and operates a hub for its international flights at New York's John F. Kennedy International Airport ("JFK Airport").

8.      Plaintiff Joan Harvey ("Plaintiff Harvey" or "Plaintiff") is a Georgia resident who worked as a flight attendant since 1991. In 1991, Plaintiff began working for Northwest Air Lines, which merged with Delta in 2008.  Plaintiff's base airport during the last 15 years of her employment with Delta was JFK Airport. Plaintiff is an African American woman and is 62 years old.

## FACTS

9. Plaintiff had a long and spotless employment history with Delta. She began working as a flight attendant in 1991 and continued until her wrongful termination on October 22, 2022.

10. Delta conducts performance reviews annually in which Delta employees are assessed by their supervisors and their colleagues.

11. In over 30 years, Plaintiff did not receive a negative review or any disciplinary action.

12. In or about 2020 Plaintiff became a "purser" or chief flight attendant. This is a position given selectively to flight attendants, like Plaintiff Harvey, with clean records and a history of positive performance. The purser on a flight oversees other flight attendants and ensures passengers are safe and comfortable. A flight purser completes detailed reports and verifies that all safety procedures are followed.

13. Plaintiff's base airport was JFK Airport in New York. One of her frequent assignments was Delta's flight from JFK Airport to Accra, Ghana.

14. On October 18, 2021, Plaintiff Harvey worked on the flight from New York to Accra. She was the pursur flight attendant in the main cabin.

15. The flight landed in Ghana on October 19, 2021. Plaintiff was scheduled to work the return flight to New York on October 20, 2021.

16. In the evening of October 19, 2021, Plaintiff attempted to go out for dinner in Accra. While out, she slipped and injured her ankle.

17. After falling, she returned to her hotel and tended to her injury.

18. The following morning, October 20, 2021, Plaintiff's ankle became severely swollen and painful. She determined that she could not work on the return flight she was scheduled to work that evening.

19. On October 20, 2021, Plaintiff attempted to call her base manager in New York several times to request that she be removed from the flight so she could seek medical attention in Ghana first. Plaintiff was not initially successful in reaching her base manager in New York to make this request.

20. Plaintiff encountered several Delta colleagues in the hotel who observed her limping and inquired about her injury.

21. Plaintiff then sat at the hotel's poolside restaurant and ordered food and a non-alcoholic beverage.

22. Plaintiff noticed two white people who appeared very comfortable with each other eating and drinking together near the pool. Plaintiff only recognized the woman as a fellow Delta flight attendant. She did not recognize the white man.

23. While finishing her meal, the white man, in plain clothes, and the young white woman, in a bikini, approached Plaintiff.

24. After Plaintiff identified herself to the white man as a Delta flight attendant, the man identified himself as Peter Corrao, a Delta pilot, and accused Plaintiff of drinking alcohol prior to her shift in breach of Federal Aviation Administration regulations ("FAA").[1]

25. In shock, Plaintiff explained to the pilot that she was absolutely not drinking alcohol and attempted to provide him with evidence.

26. The pilot insisted that his observation was correct and told her that he was going to immediately report her to Delta to have her removed from the flight that evening.

---

[1] Federal Aviation Regulation 14 CFR part 120 states that certain aviation employees, including flight attendants and pilots, cannot consume alcohol within eight hours of their shift. This regulation also mandates that an employer, with reasonable suspicion that an employee consumed alcohol within the eight-hour period before their shift, require that the employee submit to an alcohol test.

27. The bikini-clad white woman who accompanied the pilot remained with Plaintiff long enough to express her own shock at his behavior saying to Plaintiff, "I can't believe he's acting that way."

28. Plaintiff later discovered that the pilot proceeded to brag to other Delta employees about removing her from the flight.

29. Soon after finishing her meal, Plaintiff successfully reached her base manager in New York and requested to be removed from the flight that evening because of her injury and need for medical attention.

30. Plaintiff's base manager, David Gilmartin, informed Plaintiff at that time that Captain Corrao had reported her already for alcohol consumption and removed her from the flight. Plaintiff informed Mr. Gilmartin that she was not drinking alcohol and was not in breach of Delta's or the FAA's regulations.

31. At no time did anyone from Delta instruct Plaintiff to get tested for alcohol consumption – as required by Federal Aviation Regulations in circumstances when Delta has reasonable suspicion that a flight attendant consumed alcohol within eight hours of his or her shift.

32. Plaintiff then sought medical attention in Ghana and returned to New York as a passenger and with the assistance of a wheelchair on October 21, 2021.

33. Upon arriving at JFK Airport on October 22, 2021, Plaintiff – a model employee for three decades – was informed that she was suspended without pay, based on the false and unfounded accusations of Captain Corrao.

34. Plaintiff attempted numerous times to present Delta with documentary evidence and her own detailed account of what transpired on October 20, 2021 in the hotel in Accra, Ghana.

35. Delta disregarded Plaintiff's clear evidence, and after 45 days of unpaid suspension, Delta terminated Plaintiff's employment.

36. On December 6, 2021, Delta encouraged Plaintiff to resign or retire immediately, but only gave her 72 hours to make that decision or permanently lose the benefits of either option.

37. At the same time, Plaintiff was told that she could appeal the decision to terminate by making use of Delta's in-house conflict resolution process ("CRP").

38. Plaintiff immediately complained to Delta's human resources office ("HR") that she was unjustifiably pushed out of her job. Plaintiff also filed an appeal with CRP and through the Open Door policy by communicating all the facts to base manager David Gilmartin.

39. Plaintiff also submitted a complaint to Delta's internal Equal Employment Opportunity office stating that she had been treated unfairly and in a discriminatory manner.

40. Plaintiff supported her appeals to Delta with statements from the hotel employee who served her meal in Ghana, a Black woman who had dined with her that day, other African American Delta employees regarding her character, and with documentary evidence, including receipts from the hotel restaurant detailing the food and non-alcoholic drinks that she purchased on October 20, 2021.

41. Delta disregarded everything she submitted. In fact, Mr. Gilmartin told Plaintiff that he would not consider any of the evidence or testimony from the people – namely Black people – that she submitted.

42. Further, Delta's EEO office stated that the statements Plaintiff submitted from non-Delta employees – all of whom were Black – could not be substantiated.

43. However, Delta did accept a statement from the white, bikini-clad flight attendant who had been eating and drinking with Captain Corrao by the hotel pool and who witnessed the

incident in Ghana. Upon information and belief, the white woman's statement was submitted in support of the pilot's accusation.

44. The determination made by the EEO office was – by its own admission – a decision to believe the testimony of its white and younger employees over the testimony of a dedicated Black employee of 30 years.

45. Delta's EEO office rejected Plaintiff's complaint of age and race discrimination based on discrepencies in her account of the event and the pilot's account. Clearly, Delta simply chose to believe its white employee and not its Black employee or the documentary evidence she provided.

46. In a similarly nonsensical manner, Delta informed Plaintiff that her termination could not be appealed through the CRP program because she was terminated for a violation FAA regulations. Delta itself did not follow FAA protocol for handling suspected alcohol consumption by a flight attendant by requiring her to get tested for alcohol consumption.

47. Upon information and belief, Delta regularly does follow that protocol when addressing suspected alcohol consumption by white or younger employees.

48. In addition, Delta regularly allows white and younger employees to defend themselves and oppose allegations of FAA violations through the process outlined in FAA regulations and through Delta's internal CRP process.

49. Throughout the many years Plaintiff worked for Delta, she observed white and younger colleagues suspected of alcohol consumption, retain their jobs, receive disciplinary consequences short of termination, and make use of Delta's internal CRP process to contest the allegations.

50. Delta's actions were cleary intentional and an effort to put to pasture an older Black employee.

### FIRST CLAIM FOR RELIEF
### Section 1981, 42 U.S.C. §1981 – Racial Discrimination

51. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

52. In violation of Section 1981, Defendant intentionally and willfully discriminated against Plaintiff on the basis of her race.

53. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

54. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

55. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical injuries, and medical treatment, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
### Title VII, 42 U.S.C. §2000e, et seq. – Race Discrimination

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

57. In violation of Title VII, Defendant intentionally and willfully discriminated against Plaintiff on the basis of her race.

58. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

59. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

60. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical injuries, and medical treatment, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### ADEA, 29 U.S.C. §621 et seq. – Age Discrimination

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

62. In violation of the ADEA, Defendant intentionally and willfully discriminated against Plaintiff on the basis of her age.

63. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

64. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

65. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical injuries, and medical treatment, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### New York State Human Rights Law ("NYSHRL") – N.Y. Exec. Law §§ 290 *et seq.* Racial and Age Discrimination

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

67. In violation of NYSHRL, Defendant intentionally discriminated against Plaintiff on the basis of her race and age.

68. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

69. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

70. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical injuries, and medical treatment, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, liquidated damages, and punitive damages, to be paid by Defendant;

B. Penalties available under applicable laws;

C. Costs of action incurred herein, including expert fees;

D. Attorneys' fees;

E. Pre-judgment and post-judgment interest, as provided by law; and

F. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York
April 3, 2023

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: */s/D. Maimon Kirschenbaum*
D. Maimon Kirschenbaum
Leah Seliger
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.